Good morning. May it please the Court, I am Lawrence Kaye of Herod Feinstein, Attorneys for Plaintiff Appellant Marei von Saher. I would respectfully reserve five minutes. All right. I guess the good news in this case is that we know where the paintings are. So we can start with that proposition and we don't need to talk about that. So you may proceed. Thank you, Your Honor. We do know. We submit that the District Court erred in dismissing Marei's longstanding claim for those two paintings that we know where they are. They were indisputably, wrongfully taken in a forced sale from Marei's father-in-law, Jacques Herdsticker, by the Nazis, indeed by Hermann Göring himself, in 1940. The District Court's dismissal was First, it improperly ruled that the post-war Dutch government could assert ownership of artworks externally restituted to it by the Allies after they were found in Germany at the end of World War II. This Court, in its two prior rulings in this case, concluded that under the US-Allied external restitution policy, the receiving government was obligated to hold the returned property in trust for the rightful pre-war owner and had the responsibility to restore the works to the owners from whom they had been taken. The District Court improperly disregarded this Court's prior rulings on the policy of external restitution. Second, the District Court found that Jacques' widow, Desi, waived her claims to the looted artworks by deciding not to commence a post-war restitution proceeding. Both of these findings by the District Court contravene the Dutch government's own determinations and finding which comprise acts of state that cannot be questioned by the District Court. For the and the findings of the Dutch Restitution Committee on which its decision was based. Counsel, I just, I understand that point, but why isn't an act of state equally compelling for the 1999 Dutch Court of Appeal decision or all the prior Dutch decisions which said that your client had freely and voluntarily, with advice of counsel, relinquished any claim to these paintings? Why aren't they entitled to the act of state deference? Prior to the 1999 decision, there were no proceedings in Holland that ruled as you just said. Indeed, this Court, in its prior ruling in this case, found not just on the allegations of the complaint, but on the record and the arguments and positions of the parties and the briefs submitted by the Solicitor General, that there had been no internal restitution proceedings after the war in the Netherlands. That was the key, a key finding. All right, well, let me, I'm not, let's not get, let's just go to the 1999. Why isn't that entitled to act of state? This Court also said, in its prior decision in this case, the Cronachs were no longer in the Netherlands by the time of the 1999 decision or the further restitution proceedings and were not part of that proceeding. But in any event, even with respect to the paintings than works that were in the Netherlands at that time, that 1999 decision was, said nothing more than that it was too late for Maraai van Zaher, Jacques Solaire, to bring a proceeding under E100, which was one of the post-war restitution laws in the Netherlands. That had been closed out in 1951 and it was too late. And indeed, that Court ruled that Dessy had decided not to bring a restitution proceeding. And the Dutch secretary said she's bound by that decision in terms of a settlement of the E100 proceeding. But that's all it did. It was a procedural, not a substantive ruling. And she, though accepting it, said that it doesn't matter that they can't bring an E100 proceeding. Well, let me, I get the facts, but why isn't, why are we treating the 1999 decision with the same act of State deference that you're urging for other parts of the case? We can't treat it with the same act of State deference because it doesn't have any bearing on Maraai's claim in this Court, in the district court. Why not, since it's? Because it didn't rule on any substantive issue. Number one, the chronics, as this Court has noted, were not in the Netherlands at the time and that decision could not have been applicable to the chronics in any event. But more so, it's not a substantive decision. It was just a decision that it was too late to bring an E100 proceeding, which had closed, the time for which it closed, in 1951. But when the case then came to the State Secretary after the restitution committee reviewed it, they said, yes, we, that case should be brought. Can I, let me just, I think you probably heard a long discussion about limitations in the last case. So the Dutch court isn't just saying it's too late. It's saying you don't have a claim because your time for bringing the claim has lapsed. Under. That's a material ruling by a Dutch court. No, but it doesn't apply to the action in this case, Your Honor. It was only that they couldn't bring a proceeding under E100 that has no bearing on whether Maraai can bring a conversion and replevant action in this, in this jurisdiction. It only was a procedural ruling. It did not say that she couldn't do it. And it only said that she couldn't do it under E100. And indeed, its ruling was based on the fact that she made a decision not to bring an E100 proceeding at the time of the war. And the restitution committee report and its findings that were adopted by the State Secretary noted that she had good reason not to bring a proceeding under E100 in the Netherlands after the war, because among other things, the post-war regime deemed the theft, the taking, the forced sale by Goring to be voluntary. And even as late as 1952, in pleadings in a Hauptsdicker case, they again stated that it was nothing wrong, not coerced, and there was no way that she could get relief under the post-war regime. So that is why in 2006, the State Secretary, based on the findings, found A, that the forced sale to Goring was not voluntary, but rather involuntary, and that based on all the facts and circumstances and the way Desi was treated after the war, she was entitled as a function of the new policy-oriented restitution regime in the Netherlands to receive, to get restitution of the 200 Goring stolen artworks that was still there. So my understanding of what we did in the last decision, what the majority did, was that they sent it back to the district court to decide the, you can't hear me, can you hear me? Yes. That they sent, that the majority remanded so that the district court could decide the active state question? No, Your Honor, it did not. It did not even reach the active state question that this court instructed it to reach because it dismissed the case on other grounds, mainly its, in our respective submission, improper, incorrect interpretation of the Dutch post-war laws. Could we nevertheless affirm what the district court did on the basis of the active state doctrine? The court hasn't ruled on the active state doctrine. I understand that, but we can, we can affirm on any grounds supported by the record, and I'm asking you whether or not we should consider the active state doctrine, now that the record has been more fully developed. The defendant in its opposition brief did raise that question and brief that question, Your Honor, and we responded in our reply brief. Right. So I do believe that, yes, this court can rule on the active state question, and in our briefs, we believe we demonstrate that the sale to Stroganoff, which is what the basis of the active state question was at the time of this court's last decision, was a sale, not a restitution, a private, not a, involving private, not public interest, and that the active state doctrine cannot be used to bar litigation. But your position is twofold. One is that the Dutch Court of Appeals, which takes over the position of the counsel, doesn't issue a decision that rises to the level of an active state with respect to a substantive determination on these paintings. Is that your first point? No. My first point on the 99 decision is the fact that they couldn't bring an E-100 proceeding has no bearing on her claim. Right. And so you don't think the 100 has any active state value, the previous. It's a piggyback situation, in a way, from the first time around, which, in any Dutch Court of Appeal, is affirming. It's, you may say it's not doing anything in terms of not being able to bring something, but it's basically affirming that time has passed, hasn't it? Only with respect to the procedure involved after the war in a special, unique wartime proceeding that she could not come back 50 years later and bring the E-100 proceeding. But the decision, notwithstanding that, of the state secretary with respect to the 200 paintings that were still there in the custody of the government, but the chronics were not, was that, as a matter of law, under the new restitution policy adopted by the parliament, that she could rule that restitution was still in effect.   But let me ask you, if, if the E-100 proceeding, which that proceeding had long ago disappeared, it was also why Stroganoff, as this Court suggested in its last decision, couldn't bring an E-100 proceeding. But it has no bearing on whether the chronics can be sought now by conversion or replevin, because we're not in an E-100 proceeding. In our view, it was a purely procedural decision. And we're not questioning... But let me ask you, if, if the act of state does not apply, and then I look at your brief to see, well, what law does apply, it's not clear to me, because in some cases it talks about the Terrorism Declaration and the Washington Principles. In other places it talks about applying Dutch law. In another part it says, well, it's not a question of Dutch or U.S. law, it's a question of Dutch policies. And then another one, you apparently adopted the argument made by the Commission for Art Recovery having to do with California substantive law. So my question is, let's just assume for talking purposes that there's no active state. What law applies in your view? Your Honor, on the garden variety claims of conversion and replevin, we believe that is a function of California law. All right. The pictures are here. And California law does provide, as you've heard already today, that you can't get good title to stolen property even if you're a good faith purchaser. But the fact of the matter is that there are different elements that apply to different things. We've taken the position that the Dutch State Secretary determinations with respect to what happened after the war, to the works of Houtstikke that have stolen my goring, is an active state that is binding on this Court. And that's why we believe there was no waiver by Desi with respect to any of the goring. I thought the 2001 Dutch Secretary decision expressly said that the goring artworks case was settled in the 1950s because they did not elect to seek restitution. And by the way, it looks like there's a lot of evidence that was on advice of counsel who said, don't do it. There are financial reasons. The marketability of the collection is questionable. You'll have to pay back the money. You know, there are a whole bunch of reasons why. So everybody agrees they got good advice and made a decision. But in 2001, the Secretary says, you know, this is all settled. And the 1999 Dutch Court opinion affirmed that that's all settled. So why do you say this is not, the chronics were not addressed? The chronics were not addressed because they were not in the Netherlands at the time of any of those decisions. If I can just go back, Your Honor, to the advice that Desi may have gotten from Mr. Meyer and others that you referred to. That advice was given during the course of settlement proceedings, settlement discussions where the goring paintings were an issue with respect to those. That settlement discussion ended with the goring paintings not being part of the settlement that was eventually entered into 1952. So all of that advice was given with respect to that failed settlement, with respect to the chronics, which were expressly not included in the settlement. And rights to the goring paintings, Your Honors, which included the chronics, were reserved. As the State Secretary said in 2006, notwithstanding anything that happened then, notwithstanding the 52 settlement agreement, notwithstanding the fact that she decided not to bring a restitution proceeding then, and she based that on the findings of the restitution committee that set forth all the good reasons that she wouldn't have brought one, which is all the 1999 decision was doing, it was confirming that she didn't bring it, and thus she couldn't technically bring any 100 proceeding. But it didn't mean she had waived her rights. Indeed, the State Secretary, after the 1999 decision, fully aware of what happened then, said she did not waive her rights in a proper restitution proceeding, which is legal, Your Honor, though based on policy it is a legal regime in the Netherlands. But they did, but her representatives did tell the Dutch State that they were not going to make the claim for the chronics at the time of those restitution proceedings. So I'm wondering what you think the Netherlands should have done. Were they under an obligation to hold onto the chronics in perpetuity just in case Desi changed her mind? It's not in perpetuity, Your Honor. It was under the terms of external restitution. And the conditions upon which... Well, the external restitution took place. The U.S. government did perform its obligations under the external restitution. What we're talking about here is the internal restitution. And as this Court has previously held, Your Honor, there was never any internal restitution with respect to the chronics because Desi elected for good reason not to bring that proceeding. I'm not sure we ever actually held that. Your Honor... There was a suggestion of that, but it was all sent back. It was on a motion to dismiss, and it was all sent back for development of the facts. And now I understand in the record, having read it, there's all these letters from advisors and the formal... The record bears out what this Court said was understandable in its last decision, that there was no internal restitution proceeding in 1951 because Desi, for good reason, chose not to... But it was their own strategic reasons, in part, as I understand it from the record, having to do with the fact that the firm was going to have to pay out a certain amount of money to get the artworks back. And then there were taxes involved, and she had many lawyers involved in advising her on this. I agree, Your Honor, that that information was given by advisors in connection with the attempt to settle those claims with the government. That settlement never came with respect to the Goring paintings. That advice is of no moment because it was all in connection with what might have happened in a settlement that never occurred. And in any event, it's out of the question now  as a representative of the sovereign under its well-thought-out regime that she didn't waive her rights. And that's what we're relying on here. Are you talking about the 1999 decision? I'm sorry? Which decision are you talking about? The 2006 decision by the State Secretary. Right. And also... Your theory is that basically, if she didn't waive her rights, that the government still holds the paintings, basically, in custodial relationship forever. Yes, Your Honor. I mean, is there any... It's not a question of forever. It's a question that in this case, Desi, because of the way she was treated after the war is confirmed by the State Secretary in the 2006 decision, could not bring a proceeding to get them. It was futile. So, yes, while there was no opportunity to get them, under external restitution, the state had to continue to hold them in custody, and we submit that it did. And indeed... And does that come... Does that stem from the London Declaration or from what international or legally binding document, in your view? When under... And I still want to get back to your question about 2001, but under the external restitution doctrine, when the objects that were submitted and stolen during the war were returned to the country of origin, there was a condition, and this condition of responsibility to find the true owner and get it back to them. That was the only reason it went back to them under external restitution. There should have been bona fide internal restitution proceedings to get that done. That did not happen here. In the words of the reports in the 2000s, that was never done. It was inappropriate. They didn't do the job the way they were supposed to. And that was a condition of their getting it back. Am I incorrect that the receipt for the chronics did not include that language? The receipt for the chronics did not include that language because there was going to be a new regulatory system  So all of the receipts changed in terms of language. But of all the Goering paintings, identical paintings had the receipt before and after the chronics. They all had the condition and it was part of external restitution as confirmed by the Presidential Commission on Holocaust Assets that they had the responsibility You've used all your time but before we go to the other side I want you to go back to Judge Donato's question. The first State Secretary's decision was based on the first regime in place then and it started in the mid-90s before the Washington Principles were adopted and he just made a mistake the same mistake that the post-war government made and called it voluntary. Then it went up to the Court of Appeals They said it's too late to bring one. Then the new regime was adopted I think in 2002 and that was the regime that the claim for the 200 chronics were then made under Then the State Secretary overruled the first State Secretary and said you're wrong It was involuntary That was the whole subject of the report that she relied on and it was in her the word involuntary was in her decision and that was the significance of the decision and the fact that she didn't waive her rights So yes, and throughout the findings of the Restitution Committee and the recommendations of the Restitution Committee and they're set forth in our briefs, Your Honors It confirms that the Goring paintings that were now under consideration were held in custody still It was continual references to the custodial nature of the holding and in 2012 also set forth in our brief there was a return of a Houtsteker picture in 2012 long after all of this and the court the Restitution Committee and the State Secretary in that decision noted that this was being returned to the Netherlands because it was to be held in custody for the pre-war owner So throughout, Your Honors it was to be held in custody it should have been held in custody there was absolutely no authority for the district court judge to find that it was owned by the Dutch government after the war We have an anarchist by Professor Besselink who said even if you did do that it would have been unconstitutional and you can't read it that way and in any event as we show the officials of the Dutch government charged with the responsibility of implementing the now discredited post-war rules said that even though at the beginning there was arguments that this became enemy property astonishingly that the ruling that the judge made was that when it came back under external intuition it became owned by the Nazis again and then became enemy property and that couldn't be You'll have a short time for rebuttal but you've extended already quite a bit Thank you Thank you May it please the court Fred Riley Jr. for the Norton Simon Appellees I'd just like to clarify a couple of things about the 1999 decision that Judge Donato and I think Judge Wardlaw asked about The 1999 decision was a substantive decision The Dutch Court of Appeal was sitting as the Council for Restoration of Rights It was sitting as that agency that under the Dutch post-war restitution scheme was tasked with administering recuperated property So it's sitting as the Council for Restoration of Rights What it concluded was that it could not grant this plaintiff restoration of rights ex officio It's not a statute of limitations ruling It's a substantive ruling that it would not exercise its power to grant the plaintiff restoration of rights We know this from the very text of the decision where the court says that it would not grant that kind of relief Now my friend Mr. Kay says that that proceeding did not encompass the chronics But that's demonstrably wrong In the plaintiff's amendment to the briefing submitted to the Dutch Court of Appeal again sitting as the Council for Restoration of Rights the plaintiff made a demand for monetary compensation and the monetary compensation was specific to works of art that had been transferred If you look to the list of works of art that had been transferred or sold the only two paintings on that list are the chronics So the 1999 proceedings did in fact encompass the chronics We know that the decision that the Dutch Court of Appeal sitting as the Council rendered was substantive and it operates as a rule of decision it is an active state that we submit forecloses the plaintiff's claim of title and indeed we submitted as a matter of preemption forecloses the lawsuit from being heard here at all E-100 which is the restoration of rights remedy that the plaintiff sought from the Dutch Court of Appeal is the exclusive remedy It's the exclusive remedy for a claimant seeking restoration of rights This is a matter that plaintiff's own experts conceded and the Dutch Court of Appeal held that it is not available to this plaintiff and we submit that in the absence of that if there's no restoration of rights available then E-133 operates as the District Court concluded to vest the Dutch state with title certainly but more than that it just forecloses this plaintiff's claim of title as an active state That active state Do you need a determination as to title in order to preclude a further proceeding for vesting of title in other words do you need to make that determination No Your Honor So the two are independent Is Judge Walter recognized by operation of E-133 which is the reparation statute that the Dutch state enacted after the war the Dutch state became the owner subject to E-100 It is a separate ground from active state simply by operation of Dutch law the Dutch state became the owner unless there was a restoration of rights claim that was filed and that was successful that did not happen here as Judge Wardlaw noted the plaintiff's predecessor and interest the Houtsticker firm told the Dutch state it would not seek to recover it would not seek restoration of rights to the Gehring Works and so by operation of law the title fell to the Dutch state which I would note it exercised in the 1950s when it auctioned off other Houtsticker works and so what the 1999 decision helps tell us in terms of Dutch law and how it worked I mean it does tell us something about the operation of Dutch law and it says there is E-100 that is the relief that you are seeking consistent with the post-war declarations I am sorry restitution decrees but this plaintiff is not entitled to it now Mr. Case says that the 2006 decision somehow unraveled that but that can't be right because the state secretary who returned the 206 paintings that were still in Dutch hands at that point expressly validated the Dutch Court of Appeals decision and I think it's worth quoting what she says unlike the restitutions committee I am of the opinion that in this case it is a matter of restoration of rights which has been settled in 1999 the Hague Court of Appeal in its capacity as restoration of rights court gave a final decision in this case this is why this case is not included in the current restitution policy so when the state secretary is handing back the 206 paintings that are still in Dutch hands it's not even a party that policy I would note expressly does not include and does not apply to works of art that have been transferred which is this very situation the Dutch state had already exercised its sovereign power in 1967 when it transferred the works to our predecessor the museum's predecessor in interest Commander Stroganoff and prior to that it had exercised ownership of other Houtsteker works it treated the paintings as Dutch property and we know this because plaintiffs experts admitted it let me just quickly if active state applied would you say that the 1999 Court of Appeal decision is the only act that would be determinative of the case Judge Gennaro I think that the 1999 decision disposes because it operates as a rule of decision it disposes of plaintiff's claim but I would also note that there are other acts of state that operate as a rule of decision under that doctrine to foreclose plaintiff's case and also to grant the museum title independently of Dutch law and that is that it exercised its authority to transfer the works the chronics to Commander Stroganoff that act and there's no question but that a sovereign's decision to transfer works like that to somebody who has claimed them in resolution of their claim that that is a sovereign act entitled to deference so we must invest the museum as a matter of rule of decision with title to the chronics but let's to affirm for example just hypothetically speaking to affirm an act of state would it be necessary in your view to go past the Dutch 1999? No your honor it would not so you could stop at 1999 yes your honor and if the court has no further questions I'm not done yet unless you were going on to another subject sure well you know that um Mr. Kaye raised a number of questions first has to do as I read their briefs that all of this maybe icing on the cake but it sort of obscures what is more fundamental requirement to hold the Dutch government sure in effect to hold these paintings in trust yes um and that most of what we're talking about says well you can't do this you can't do that because the paintings aren't here they've been transferred yes and they say forget all that let's get to the bottom of it so why under the various um other doctrines would they not have the obligation to hold these in trust there's a couple of reasons for that Judge McEwen the first is we've always asserted those policies so the policy US policy of external restitution together with the Washington principles and terrorism declaration we believe that those policies support us but as a matter of preemption and that's what was at issue in the last two appeals field preemption in the first one conflict preemption in the second one what Mr. Kaye is suggesting is that those policies somehow apply here as a choice of law matter and that can't be right first of all they aren't strictly speaking law they are non-binding policies they certainly couldn't even if they were law bind the Dutch government in the absence of some kind of a treaty but they're not law is sort of the essential point secondly Mr. Kaye gets the substance of those policies wrong if you look at what external restitution was intended to do was to look to the country of origin as the country and their internal restitution schemes to dispose of claims like this so external restitution was intended to look to the country of origin now when you look at the Washington principles and the terrorism declaration they fundamentally don't change that in the sense that what they say is countries that the policies that ought to be adopted by these countries and that they need to act within their own laws and that the norms and principles that are adopted in the regulations when you take all those things together so you take external restitution which requires the U.S. to look to countries of origin you take the acknowledgement in the terrorism declaration and the Washington principles that these countries still have to act within their own laws you've got the articulation of the United States itself in this case in the Solicitor General's brief it has said what U.S. policy is and indeed it has said what U.S. policy is in the context of this case and with respect to these paintings it says when a foreign nation like the United States under the external restitution policy the U.S. has a substantial interest in respecting the outcome of that nation's proceedings so we know that what the Dutch state did is fully consistent with U.S. policy and it is policy not law articulated in the terrorism scheme that the plaintiff has challenged throughout this litigation which has been running for ten years in the past the plaintiff has challenged the requirement that consideration be returned the plaintiff has challenged the fact that there is a restitution scheme in occupied Germany the plaintiff's experts acknowledge that whether you apply international law or U.S. law requiring a claimant to come forward within a certain amount of time wouldn't violate either U.S. law  U.S.   the plaintiff has challenged the requirement that consideration be returned the plaintiff's experts acknowledge that there is a restitution scheme in occupied Germany the plaintiff's experts acknowledge  there scheme in occupied Germany  plaintiff's experts acknowledge that
judges: McKeown, Wardlaw, Donato